# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 7, 2008        Decided February 24, 2009

No. 07-5307

MICHAEL F. WASSERMAN,
APPELLANT

v.

DENISE RODACKER, UNITED STATES PARK POLICE OFFICER
AND UNITED STATES OF AMERICA,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 06cv01005)

*Michael F. Wasserman*, appearing pro se, argued the cause and filed the briefs for appellant.

*Marian L. Borum*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: SENTELLE, *Chief Judge*, and RANDOLPH and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.*

RANDOLPH, *Circuit Judge*:  Michael F. Wasserman brought tort and constitutional claims against a U.S. Park Police officer who arrested him for walking his dogs without a leash and for assaulting a police officer.  The district court dismissed the tort claims due to Wasserman's failure to exhaust his administrative remedies and granted summary judgment to the officer on the constitutional claims.  We affirm.

I.

Walking a dog on public property without a leash is a criminal offense under District of Columbia Municipal Regulation 24-900.3.  On February 20, 2005, Wasserman was walking his two dogs without leashes in Montrose Park, a public park in northwest Washington, D.C.  Denise Rodacker, a U.S. Park Police Officer, observed Wasserman and began following him.  He started walking away quickly, at which point Rodacker ordered him to stop and answer some questions.  Wasserman responded that he did not have to answer and continued walking. Rodacker ran to catch up with him and placed her hand on his left shoulder.  She claims that Wasserman tried to pull himself out of her grip, while he claims that he immediately stopped and stood still.  Rodacker then forced Wasserman's arm behind his back, handcuffed him, and placed him under arrest.

Rodacker took Wasserman to the Rock Creek Park Police Substation, where he was charged with violating the dog leash law and assaulting a police officer.  Because the assault charge was a felony, Wasserman was transported to the Metropolitan Police Department central cell block and held there pending presentment in the Superior Court of the District of Columbia.

*Judge GARLAND concurs in Part I of the opinion on the ground noted in subpart B, and concurs in Part II.

He appeared before the court the following afternoon. The U.S. Attorney's Office dropped the assault charge. Wasserman was arraigned on a charge of violating Regulation 24-900.3. He agreed to post a $25 security in exchange for the prosecutor's entry of nolle prosequi on this remaining charge.

On February 21, 2006, Wasserman filed suit in the Superior Court of the District of Columbia alleging that Rodacker, acting under color of law, violated his constitutional rights and assaulted, battered, and falsely imprisoned him in violation of the common law of the District of Columbia. The United States substituted itself as a defendant against the common law tort claims pursuant to 28 U.S.C. § 2679(d) and removed the entire case on Rodacker's behalf to the United States District Court for the District of Columbia. The district court denied Wasserman's motion to strike the substitution of the United States and his motion to remand the case to Superior Court. The court granted defendants' motion to dismiss the tort claims pursuant to 28 U.S.C. § 2675(a) because of Wasserman's undisputed failure to exhaust his administrative remedies. It then granted summary judgment to Rodacker on the constitutional claims.

Wasserman asserts that the district court erred in permitting the removal of his claims from the Superior Court. He points out that the attorneys who signed the Notice of Removal and then filed it in district court had not properly entered an appearance as attorneys for Rodacker.[1] Therefore, he contends, Rodacker technically never filed a notice of removal. He further

---

[1]D.D.C. Local Civ. R. 83.6(a) states: "An attorney eligible to appear may enter an appearance in a civil action by signing any pleading described in Rule 7(a), Federal Rules of Civil Procedure, or by filing a written notice of entry of an appearance listing the attorney's correct address, telephone number and bar identification number."

argues that the United States could not substitute itself as a defendant and remove the case on its own behalf under 28 U.S.C. § 2679(d)(2) because that provision does not apply to cases originally filed in the local courts of the District of Columbia.

There is no dispute that Rodacker had the right to remove this case in its entirety; 28 U.S.C. § 1441(b) permits removal of constitutional claims, and § 1442(a)(1) permits removal of claims against an officer of the United States acting under color of office. It is also clear that the notice of removal was filed on behalf of both the United States and Rodacker. The notice recites Rodacker's grounds for removal under 28 U.S.C. § 1441 and § 1442 – grounds that could not apply to the United States. It begins by stating: "Defendant respectfully notifies the Court as follows" and then identifies Rodacker as the defendant. The notice also states that Rodacker is a U.S. Park Police Officer. All indications are that the United States Attorney and the two Assistant United States Attorneys who signed the notice were representing Rodacker; they cited 28 C.F.R. § 50.15, subsection (a) of which authorizes government attorneys to represent a federal employee in civil proceedings if the employee has acted "within the scope of the employee's employment." The notice might also have invoked the provision of the Westfall Act imposing a duty on the Attorney General to "defend any civil action or proceeding brought in any court against any employee of the Government" for tort damages. 28 U.S.C. § 2679(c).

Wasserman says that because the government attorneys did not file a formal entry of appearance, there is no way of knowing whether they were really speaking for Rodacker when they removed the case. This is not a serious contention. Rodacker did not object to the notice of removal; she never complained about the representation the three government attorneys provided her; and throughout the rest of the case, one

of those attorneys continued to serve as her counsel. In the district court, she opposed Wasserman's motion to remand. Her intention to remove the case is clear, her notice of removal was timely and properly stated the basis for removal, and any confusion over the identity of her attorney did not prejudice Wasserman. To force her to file an amended notice would be especially pointless.[2] *Cf. Mathews v. Diaz*, 426 U.S. 67, 75 & n.9 (1976). The case reached completion in the district court and the district court had jurisdiction over it. Even if there were some minor procedural defect in removing the case, Supreme Court precedent strongly disfavors upsetting the judgment. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 75–77 (1996).

In a tort case against a federal employee, the United States will be substituted as the party defendant upon certification by the Attorney General that the employee was "acting within the scope of his employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d). This provision applies to "any civil action or proceeding commenced . . . in a United States district court," *id.* § 2679(d)(1), or "in a State court," *id.* § 2679(d)(2). We have decided three cases in which we indicated that 28 U.S.C. § 2679(d) permitted the United States to substitute itself for one of its employees in cases initially filed in the Superior Court of the District of Columbia. *Norman v. United States*, 467 F.3d 773 (D.C. Cir. 2006); *Haddon v. United States*, 68 F.3d 1420 (D.C. Cir. 1995), *abrogated on other grounds by Osborn v. Haley*, 549 U.S. 225 (2007); *Kimbro v. Velten*, 30 F.3d 1501 (D.C. Cir. 1994). In *Haddon*, for instance, we stated with respect to an action begun in Superior Court that

---

[2]Although an amended notice of removal would come long after the 30-day deadline of 28 U.S.C. § 1446, that deadline is not jurisdictional, and the district court would have discretion to allow the amendment. *See, e.g.*, *Loftin v. Rush*, 767 F.2d 800, 805 (11th Cir. 1985).

the lawsuit "was initially filed in state court . . .." 68 F.3d at 1423.

In none of the three decisions just cited did we elaborate on the reasons why the Superior Court was a State court under the Westfall Act. The point must have seemed obvious. The central purpose of the Act is to indemnify federal employees from tort liability arising from acts committed within the scope of their employment. Congress took this step in response to the Supreme Court's denial of absolute immunity in *Westfall v. Erwin*, 484 U.S. 292 (1988). *See* Westfall Act, Pub. L. No. 100-694, § 2, 102 Stat. 4563, 4563 (1988). The mere "prospect" of tort "liability," Congress found, would "seriously undermine the morale and well being of Federal employees [and] impede the ability of agencies to carry out their missions." *Id.* § 2(a)(6). A specific Congressional finding stated that the Act was meant to remove "the threat of protracted personal tort litigation for the entire Federal workforce." *Id.* § 2(a)(5). Federal employees performing official duties in the District of Columbia are obviously a significant part of the "entire Federal workforce."

A.

There are two grounds supporting our earlier decisions, either one of which permitted the United States to substitute itself for Rodacker pursuant to 28 U.S.C. § 2679(d)(1). The first is that upon Rodacker's timely removal of the case to federal court, Wasserman's action was "commenced . . . in a United States district court." While any case removed from a state court necessarily originated outside of district court, its removal creates a federal civil case (here, Case 06-cv-01005) with a procedural beginning and end. Federal civil actions are typically commenced when the plaintiff files his complaint in a district court. *See* FED. R. CIV. P. 3 ("A civil action is commenced by filing a complaint with the court."). Wasserman did not re-file

his complaint with the district court after removal and the Federal Rules of Civil Procedure – which treat the District of Columbia as a State, FED. R. CIV. P. 81(d)(2) – explicitly provide that such a formality is unnecessary. FED. R. CIV. P. 81(c)(2). Thus the absence of re-filing does not alter our analysis. According to the applicable rules of civil procedure, Wasserman's action commenced in the district court when removal was effected and the complaint was received by the clerk, *see* FED. R. CIV. P. 3, 5(d)(2). As such, 28 U.S.C. § 2679(d)(1) applies to this action, and it allows the United States to replace Rodacker as the party defendant to the tort claims against her.

B.

In the alternative, the United States properly substituted itself as a defendant because the Superior Court was a "State court" within the meaning of 28 U.S.C. § 2679(d)(2). There is a longstanding legal tradition of interpreting "State" in various federal statutes as encompassing the District of Columbia. The Supreme Court long ago recognized that the word "State" "sometimes . . . has the larger meaning of any separate political community, including therein the District of Columbia and the territories." *Talbott v. Bd. of County Comm'rs of Silver Bow County*, 139 U.S. 438, 444 (1891). The Court has repeatedly interpreted the term "State" to include the District of Columbia when that interpretation reflects Congress's intent, *Hurd v. Hodge*, 334 U.S. 24, 31 (1948); *Talbott*, 139 U.S. at 444 (collecting cases); *see also Loughran v. Loughran*, 292 U.S. 216, 228 (1934) (treating the District as a "State" under the Full Faith & Credit Clause), and this court has followed suit, *Madley v. U.S. Parole Comm'n*, 278 F.3d 1306, 1309 (D.C. Cir. 2002); *Garris v. Lindsay*, 794 F.2d 722, 724 n.8 (D.C. Cir. 1986); *see also Norman*, 467 F.3d at 774; *Haddon*, 68 F.3d at 1423; *Kimbro*, 30 F.3d at 1505–06. In every case, context and the

overall purpose of the federal statute must be considered. *See, e.g.*, *District of Columbia v. Carter*, 409 U.S. 418, 420 (1973). These decisions, coupled with the Westfall Act's unambiguous purpose – to protect the "entire Federal workforce," Westfall Act § 2(a)(6), from tort liability for official actions – compels the conclusion that Congress intended "State court" in § 2679(d)(2) to include the Superior Court of the District of Columbia. We can think of no policy reason, no logical reason, no reason whatever why Congress would have intended otherwise.

Wasserman lists other statutes in which Congress defined "State court" to include the courts of the District of Columbia. His point apparently is that when Congress wanted the District to be considered a State, Congress said just that. This type of argument is usually not a particularly strong one. *See City of Naples Airport Auth. v. FAA*, 409 F.3d 431, 434 (D.C. Cir. 2005); *Doris Day Animal League v. Veneman*, 315 F.3d 297, 299 (D.C. Cir. 2003). Here it is especially weak because Wasserman cannot explain why Congress would have wanted cases begun against federal employees in the District of Columbia local courts to be excluded from the Westfall Act.[3] Of course matters would have been clearer if Congress had

---

[3]If anything, one of Wasserman's examples actually cuts against his argument. Congress explicitly defined "State court" to include the D.C. Superior Court in the "Definitions" provision of the federal removal statute. 28 U.S.C. § 1451. This definition technically applies only to the chapter containing the general removal provisions of the U.S. Code – the substitution and removal provision of § 2679 is located in a different chapter for which no definition of "State court" is provided. We cannot fathom any plausible reason – nor does Wasserman suggest one – why Congress would intentionally treat the D.C. Superior Court as a State court under the general removal statutes but not the Westfall Act.

included a definition of "State" or "State court." But Congress's failure "to speak with clarity signifies only that there is room for disagreement about the statute's meaning." *City of Naples*, 409 F.3d at 434 (quoting *Doris Day Animal League*, 315 F.3d at 299); *see Goldstein v. SEC*, 451 F.3d 873, 878 (D.C. Cir. 2006).

## II.

Having determined that Rodacker properly removed this action to the district court and that the United States was properly substituted as a defendant against Wasserman's tort claims, we proceed to the merits of the case. Upon substitution of the United States as a party defendant, the Westfall Act dictates that the action "shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those actions." 28 U.S.C. § 2679(d)(4). Among these limitations is the requirement that a plaintiff present his claim to the appropriate federal agency and receive a denial of the claim in writing before his tort action may proceed. 28 U.S.C. § 2675(a). Wasserman failed to exhaust his administrative remedies, and the district court properly dismissed his claim.[4]

---

[4]Wasserman counters that the Federal Tort Claims Act, 28 U.S.C. § 2402, which requires facts to be tried by a judge rather than a jury, violates the Seventh Amendment. This argument is foreclosed by a long line of Supreme Court decisions holding that the Seventh Amendment's right to trial by jury does not apply in actions against the federal government. *See, e.g.*, *Osborn v. Haley*, 549 U.S. 225, 252 (2007); *Lehman v. Nakshian,* 453 U.S. 156, 160 (1981); *Glidden Co. v. Zdanok*, 370 U.S. 530, 572 (1962); *Galloway v. United States*, 319 U.S. 372, 388–89 (1943).

The district court (and the defendants) construed Wasserman's complaint to allege violations of the Fourth Amendment that give rise to claims for damages under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Wasserman alleged that Rodacker arrested him without probable cause, used excessive force during his arrest, and caused him to be detained for an unreasonable length of time. The district court correctly granted summary judgment to defendants on all of these *Bivens* claims.

Wasserman now concedes that the police had probable cause to arrest him, due to his violation of the District of Columbia's dog leash law.[5] As to the excessive force claim, an officer's motion for summary judgment is to be granted unless "the excessiveness of the force is so apparent that no reasonable officer could have believed in the lawfulness of his actions." *Wardlaw v. Pickett*, 1 F.3d 1297, 1303 (D.C. Cir. 1993). We evaluate the reasonableness of Rodacker's behavior based on "the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The inquiry is objective; the subjective intent of the officer (which Wasserman alleges was malicious here) is irrelevant. *See Whren v. United States*, 517 U.S. 806, 812–13 (1996).

---

[5]Probable cause is evaluated based on an objective standard. *Whren v. United States*, 517 U.S. 806, 812–13 (1996). The fact that Rodacker had probable cause is sufficient under the Fourth Amendment even if Wasserman's leash law violation was not actually the basis for the arrest. *See id.; United States v. Bookhardt*, 277 F.3d 558, 564 (D.C. Cir. 2002).

Taking the evidence before us in the light most favorable to Wasserman, *see, e.g.*, *Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006), we assume that Wasserman was not moving or offering any resistance after Rodacker first touched his left shoulder and that Rodacker forcefully pressed upwards on Wasserman's arm before handcuffing him, causing him pain. Nonetheless, it was reasonable for Rodacker to apply force to Wasserman's arm to secure his compliance during arrest. Police officers have authority to use "some degree of physical coercion" when arresting a suspect, *Graham*, 490 U.S. at 396, and Wasserman's refusal to obey Rodacker's order prior to his arrest suggested that he might try to resist or escape. Wasserman suffered no bruise or injury, which tends to confirm that Rodacker did not use "more force than reasonably appeared necessary" to secure Wasserman's compliance. *Scott v. District of Columbia*, 101 F.3d 748, 760 (D.C. Cir. 1996); *see Saucier v. Katz*, 533 U.S. 194, 209 (2001), *overruled on other grounds by Pearson v. Callahan*, 129 S.Ct. 808 (2009); *Wardlaw*, 1 F.3d at 1304. In light of the facts and circumstances of the arrest, Rodacker's alleged use of force was not excessive.

A person arrested without a warrant and detained is entitled to a probable cause determination by a neutral magistrate within a reasonable period of time. Forty-eight hours is presumptively reasonable. *County of Riverside v. McLaughlin*, 500 U.S. 44, 53–54, 56 (1991). Wasserman was arrested at approximately 8:00 AM on Sunday, February 20, 2005, and received a hearing at approximately 3:00 PM the next day, well within the 48-hour period. A detention of less than 48 hours may be unreasonable if, for example, the probable cause hearing is intentionally delayed out of "ill will, or delay for delay's sake." *Riverside*, 500 U.S. at 56. Wasserman does not attempt to show that Rodacker delayed his hearing because of ill will or any other malicious purpose. Instead, he claims that his detention was unreasonable because it was premised on a charge of assault on

a police officer that was later dropped by the U.S. Attorney's Office. We are sympathetic towards any citizen detained overnight due to a police officer's arguably overzealous charging of offenses. Regardless, Wasserman's claim must fail because he does not allege that the *length* of his detention was unreasonable. Wasserman's arguments about the *basis* of his detention are not material. As to his detention, all the Fourth Amendment requires in this context is that he receive a hearing within a reasonable time. In addition, the police may have constitutionally detained Wasserman for up to 48 hours on the ground of his uncontested misdemeanor offense. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 352 (2001).

Officer Rodacker properly removed this action to federal court and the United States was properly substituted as a defendant against Wasserman's tort claims. The district court correctly dismissed the tort claims due to Wasserman's failure to exhaust his administrative remedies and correctly granted summary judgment to Rodacker on the constitutional claims.

*Affirmed.*